JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JAZMIN J. ALAGHA
State Bar No. 026302
Asst. Federal Public Defender
Attorney for Defendant
Jazmin_Alagha@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-23-01347-PHX-GMS |
|---|---|
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE** |
| Victor Alfonso Godinez, | |
| Defendant. | Sentencing Set May 6, 2024 |

Defendant Mr. Godinez, through undersigned counsel, respectfully requests this court impose a term of probation. On February 9, 2024, Mr. Godinez pled guilty to count 48 of the Indictment, Material False Statement During the Purchase of a Firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Sentencing is set for May 6, 2024. This request is supported by the attached Sentencing Memorandum.

Respectfully submitted:     April 30, 2024.

JON M. SANDS
Federal Public Defender

*s/Jazmin J. Alagha*
JAZMIN J. ALAGHA
Asst. Federal Public Defender

**<u>SENTENCING MEMORANDUM</u>**

Mr. Godinez is a dedicated husband and father of three. He enjoys the benefit of having a close-knit family. As a life-long resident of Yuma, Arizona, Mr. Godinez works in seasonal field labor and has become a pilar to his community. Prior to the offense, Mr. Godinez had never been in trouble in the past. He had no significant criminal history. The only conviction on his record is a traffic related Driving on a Suspended License, which was a misdemeanor and only a fine was imposed. Following his arrest, Mr. Godinez has expressed remorse and embarrassment of his actions. He has since accepted responsibility for his actions.

## I. GUIDELINES OFFENSE LEVEL CALCULATION

The defense agrees with the calculation noted in the Presentence Report ("PSR"). [DKT #27]. That is, the applicable base offense level is a twelve (12) under §2K2.1. (PSR ¶ 16). A six (6) level enhancement is applied due to the number of firearms. (PSR ¶ 17). A three-level reduction for Acceptance of Responsibility is applied, resulting in a final offense level of thirteen (13). (PSR ¶ 23-24). Since Mr. Godinez has no countable criminal history, his total criminal history points is zero and falls under Category I. (PSR ¶ 26-29). The corresponding a guideline range of eighteen to twenty-four (18-24) months under Category I. (PSR ¶ 49).

The plea further stipulates cap at the low-end (18 months) and allows for a downward variance. A downward variance to a term of twelve months is recommended in the Presentence Report. (PSR at 15). The defense agrees that a downward variance is appropriate here considering Mr. Godinez's background, the offense, and the 18 U.S.C. § 3553 factors, but respectfully request the court vary further and impose a term of probation.

## II. BACKGROUND INFORMATION

Mr. Godinez was born and raised in Yuma, Arizona in 1986. (PSR ¶ 16). He has lived and worked in Yuma for his entire life. Indeed, his wife and his two stepchildren

live in Yuma. He also is a devoted father to his fourteen (14) year old son, who lives in Wellton, Arizona with his ex-wife. (PSR ¶ 35). He maintains a loving relationship with his son and stepchildren as he is very involved and supports them emotionally and financially. (PSR ¶¶ 35-36). His parents and all his siblings also live and work in Yuma, where field labor is a good source of income. *See* (PSR ¶ 34). As a result, Mr. Godinez followed in his parents' footsteps and worked primarily in seasonal field work, specifically, working during the onion season and the lettuce harvesting season. (PSR ¶ 43). Still, work is not consistent year-round. From October of 2022 to March of 2023, Mr. Godinez supplemented his income by purchasing firearms on behalf of someone else. Mr. Godinez understands his wrongdoing and accepts that even if he was not engaging in illicit activity with said firearms nor did he have malicious intent in his actions, and that his actions were dishonest and inappropriate, nevertheless. (PSR ¶ 14).

Mr. Godinez not only works in the fields, but he also works as a caretaker to his neighbor and has become a pilar to his community in Yuma. Mr. Jeffrey Nelson has written a letter in support of Mr. Godinez and indicated how essential Mr. Godinez has been in the caring of his father. (Exhibit A)(Letter of Support by Mr. Jeffrey Nelson). Mr. Godinez is the caregiver of Mr. Nelson's elderly father, Craig Nelson, age eighty (80), who suffers from dementia. Mr. Nelson notes that Craig is dependent on Mr. Godinez for help with daily tasks, to "maintain his current lifestyle," and "overall happiness." (Exhibit A). Mr. Nelson states that but for Mr. Godinez, his father would have to leave his family home and move to a facility. Instead, Mr. Nelson's father can continue to reside in the house, city, and neighborhood he has called home. Over the course of the last two years, Mr. Godinez has become such a integral part of Craig's life that he is listed as an emergency contact. *Id*. Mr. Godinez performs wellness checks, takes Craig to doctor's appointments, and is described by Mr. Nelson as the family's "eyes and ears" into Craig's health and happiness. *Id*. However, it is not just a part-time job for Mr. Godinez or for the Nelsons. To the contrary, they have become family. *Id*.

3

Mr. Godinez has full-time employment aside from being Mr. Craig's caretaker. He recently began working with Tanimura & Antle again in anticipation of the onion harvesting season.[1] He reports he recently completed orientation. His father, Faustino Godinez has been hired to be the foreman. He would also be working alongside his wife, mother, and siblings. Mr. Godinez's wife describes him as "dependable, hardworking, and family-oriented." (PSR ¶ 38). Since Mr. Godinez is in good physical health (PSR ¶39) and without any mental health, emotional, or substance abuse issues, (PSR ¶40-41) he does not anticipate having any problems in his employment. It is an area of work, that while arduous, he enjoys. As a result, Mr. Godinez would appreciate the opportunity to a probated sentence. A probation sentence will hold him accountable while allowing him to continue to be a source of support to his wife, children, family as well as Mr. Nelson.

### III. 18 U.S.C. 3553 FACTORS

Sentencing in this matter is governed by 18 U.S.C.§3553. After the United States Supreme Court's decision in the case of United States v. Booker, 125 S.Ct. 738 (2005), this Court must consider the sentencing guidelines but is not bound by them. Judge Adelman, of the Eastern District of Wisconsin, analyzed Booker in the case of United States v. Ranum, 353 F.Supp.2d 984, 2005 WL 161223, holding: The guidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case out of the "heartland." Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as that the ultimate sentence is reasonable and carefully supported by reasons tied to the §3553 factors.

According to 18 U.S.C.§3553(a), often called the "parsimony" provision, "[t]he court shall impose a sentence sufficient, but *no greater than necessary* to comply with the purposes set forth in the paragraph (2) of the subsection." *Id*. (Emphasis added.) The

---

[1] Mr. Godinez has worked with Tanimura & Antle previously; first starting in 2018. (PSR ¶ 44). He has done well and never has had any issues, reporting that he typically works for this company during the onion season from April to May. *Id*.

provision requires the court to consider seven different factors in determining the appropriate sentence, which include the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Additionally, 18 U.S.C. §3582, states that when determining whether a prison sentencing is appropriate under §3553(a), a judge can "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." *Id*. (emphasis added). The §3553(a) factors will each be addressed individually:

**THE NEED FOR THE SENTENCE IMPOSED –**

a. <u>**The history and characteristics of the defendant**</u>

The defense agrees with he Presentence Report that the instant offense is out of character for Mr. Godinez. (PSR ¶ 65)(noting this as a basis for a downward variance). Mr. Godinez is a proud U.S. citizen and life-long resident of Yuma, Arizona, where he had lived a stable, peaceful, and law-abiding life up until the present offense. Indeed, there are no indications that Mr. Godinez was ever involved in any illicit activity in the past, other than a traffic offense for driving on a suspended license. (PSR ¶27). The PSR notes no other arrests (PSR ¶ 32), no other criminal conduct (PSR ¶30), no other pending charges (PSR ¶31). Even as a child, he never got in trouble. (PSR ¶26)(noting no juvenile adjudications). Prior to the offense, he had no negative police contact.

Even when he was approached in this offense by investigating agents, Mr. Godinez was cooperative and respectful of law enforcement. Mr. Godinez agreed to speak with agents and acknowledged wrongdoing. (PSR ¶ 7). When a summons was served, Mr. Godinez appeared as ordered. (PSR 1, PSR ¶1). While on pretrial release, U.S. Pretrial Services Officer, Ms. Karina Reyes, reports that he adjusted well on supervision, and highlighted several factors of compliance, including:

- *Maintenance of stable residence in Yuma, Arizona with wife and children;*
- *Abiding by modified release conditions, when granted permission o travel to Mexico and adhered to the travel restrictions;*
- *Surrendering of his US Passport and refraining from application of a new passport;*
- *Compliance with no weapons restrictions, and*
- *Recent employment with Tanimura & Antle.*

[DKT #28] (Release Report to the Court).

As such, it is not surprising Mr. Godinez's genuine remorse was evident to U.S. Probation Officer Angela Leonard. *See* (PSR 16)(Noting Mr. Godinez's expression of remorse, wherein the PSR states, "To [Mr. Godinez's] credit, he expressed remorse and concern for how his conduct will affect his family. The defendant also expressed a strong desire to remain law-abiding following resolution of this case."); (PSR ¶14)("The defendant conveyed he deeply regrets his involvement in the offense and would like to apologize to his family for his behavior, as he feels he disappointed them."). Indeed, true to character, Mr. Godinez has taken responsibility for his wrongdoing.

b. **The nature and circumstances of the offense**

The defense agrees with the government that the charges are serious. However, the defense disagrees that a term of incarceration is necessary when the totality of the circumstances of the offense are considered. First, Mr. Godinez did not intend to transfer the weapons to any possessor that had ill-intentions or was unable to purchase the weapons. Nevertheless, he acknowledges he did not sell or purchase the weapons responsibly. Therefore, while his actions were not malicious, that is the failure to report his true and correct address and reselling of weapons for a quick buck,[2] he understands his actions were not only lazy and illegal but also reckless and dangerous. Mr. Godinez

---

[2] Mr. Godinez admitted to agents he purchased the weapons to sell for profit, he sold some of the firearms to purchasers on armslist.com, word of mouth referrals, and to the occasional solicitor. (PSR ¶ 8). The address listed on these purchasers was not current. (PSR ¶ 9).

has also expressed regret to have been so careless and for failing to do his due diligence when purchasing and reselling the weapons.

As a U.S. Citizen, Mr. Godinez appreciates his Second Amendment right to own a firearm and recognizes that it is also a privilege that he has lost upon acceptance of responsibility via the plea agreement. Consequently, the conviction alone significantly diminishes Mr. Godinez's ability to reoffend. Further lowering a risk to recidivism, is his current stable and quiet life in Yuma, Arizona. A probation sentence is appropriate in this case when Mr. Godinez's specific intentions in the instant offense and acceptance of responsibility are considered.

c. **The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.**

The present offense is a serious offense. A felony conviction will, as noted above, result in the loss of Mr. Godinez's Second Amendment right to bear arms. As a result, he will not be allowed to purchase any firearms. Notably, since the initial contact with ATF, Mr. Godinez realized the seriousness of the allegations raised and stopped purchasing and reselling firearms immediately following that interview. *Cf.* (PSR ¶ 7)(noting the date of the interview as March 8, 2023) *with* (PSR ¶ 6)(noting the last date of purchase was March 6, 2023). Mr. Godinez was not indicted until six (6) months later, in September of 2023. Since then, Mr. Godinez has remained law abiding. The severity of the offense has been impressed on Mr. Godinez. The loss of this significant right promotes respect for the law and sends the stern message that despite one's intentions, anyone who misuses or abuses their 2nd Amendment Right in such a manner will lose said right. A term of probation is just punishment due to a law-abiding nature history, nature of the offense, and future consequences.

d. **The need for the sentence imposed to afford adequate deterrence to criminal conduct**

Mr. Godinez respects the law and the court's order. Indeed, as noted above, even the initial contact was sufficient to afford adequate deterrence. He seized engaging in the

reselling of firearms. He has further accepted responsibility knowing that he will be leaving his family and his community, specifically Mr. Nelson, on their own and without his invaluable support. He regrets his decisions as they not only affect his family, they affect his community, and certainly the public at large. For these reasons, he respectfully asks that a sentence of probation be imposed allowing him an opportunity to remain accountable while not letting his family and friends down.

**IV. CONCLUSION**

In view of the foregoing, Mr. Victor Alfonso Godinez respectfully requests this Honorable Court consider varying downward and impose a sentence of probation in this matter. If, however, the Court finds that a sentence of incarceration is appropriate, Mr. Godinez requests that a sentence of 6 months is more than sufficient but not greater than necessary.

Respectfully submitted:    April 30, 2024.

JON M. SANDS
Federal Public Defender

 s/Jazmin J. Alagha
JAZMIN J. ALAGHA
Asst. Federal Public Defender

Copy Emailed/mailed to:

Angela Leonard
U.S. Probation

Victor Alfonso Godinez
Defendant

s/J. Alagha / yc
J. Alagha / yc

8